[Crim. No. 3029.   Third Dist.   June 10, 1960.]

THE PEOPLE, Respondent, v. HAROLD GRIFFITH, Appellant.

Morton L. Friedman for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and John F. Foran, Deputy Attorneys General, for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment based upon a jury verdict finding appellant guilty of a violation of section 476 of the Penal Code (uttering a fictitious check) and from the order denying a new trial. On February 8, 1959, appellant was staying in the Mayflower Hotel in San Francisco with his codefendant, Lorraine Lawson, where they had been living as husband and wife for some time. While in the Mayflower Hotel Lorraine wrote a number of checks drawn on a bank in Auburn with which she had no account. These checks she passed at grocery stores in the neighborhood. A police investigation began. Appellant and Lorraine saw policemen who were making inquiries at the hotel. They hid their luggage in the basement and left the hotel. They did not return. They met with friends at a restaurant in San Francisco and from there came to Napa in an automobile owned and driven by one Willie Myers. They arrived February 10th around midnight. They had a few dollars in money. Appellant was unemployed. Enroute appellant stated that he was going to assume the name of Clifford Stafford for use in Napa. The two stayed at the home of Willie Myers in Napa until February 12th when they rented a house under the name of Stafford. They agreed to pay rent in advance but appellant offered the lessor a postdated check, declaring that funds would be available the first of the week when their money would be transferred from a bank in Washington. He told the lessor they had just moved from Washington where he had been employed at the Kaiser Steel Company and that he was being transferred to their plant in Napa. He said he was a structural engineer. These statements were false. He had not lived in Washington since 1947; had not been employed by Kaiser Steel Company and never had been an engineer. The two moved into the house February 12th and had some furniture moved into it. On February 12th, appellant told Willie Myers that he needed a car and was told that one could be obtained from a Mr. Farmer and that Farmer would hold a postdated check for him. About 11 p. m. on the night of February 12th, Willie Myers took the appellant and Lorraine to the home of Farmer. He introduced appellant as Clifford Stafford per the latter's

instructions, and appellant told Farmer he needed a car that night because his car had broken down near Woodland. He said he had been coming from Washington to work for the Kaiser Steel Company in Napa. He negotiated with Farmer for the purchase of a used automobile. After a while, Lorraine was brought into the Farmer home and introduced as Stafford's wife. She joined in negotiations for the purchase of the car. After some talk about paying for the car by check, Lorraine declared she had left her check book at the new home and asked Farmer to come with them to get it. The two then drove Farmer to their new home and there Lorraine showed Farmer the furniture they had put in the house, telling him that they had given the man a retainer for the house but that it was not quite finished yet. She introduced one Gary Gustin to Farmer as her nephew, saying that he was going to college. They asked Farmer to hold the check for the car, one of the reasons being to permit appellant to sell a house located in the north and have the money from this alleged sale transferred to Napa. In fact appellant had no money coming from such a source and did not then own a home as described. Lorraine also told Farmer she had purchased a considerable amount of furniture, did not know exactly how much she had in her checking account and gave this as an additional reason why she wanted the check held. She asked permission to postdate the check, but Farmer refused and the check was dated the day of the purchase contract. Appellant signed the purchase order himself and directed that the car be placed in his name, in which Lorraine concurred. Lorraine also talked of a property settlement with her former husband from which she would obtain money. It was shown that the divorce had occurred 18 years before and that at that time full property settlement had been incorporated into the divorce decree. Both Lorraine and appellant were arrested and charged with a violation of section 476a of the Penal Code, and with a violation of section 476 of said code. Lorraine pleaded guilty to the violation of section 476a and was given a county jail sentence. She testified at the trial herein. The check was dishonored. It appeared that Lorraine had never had an account in the bank on which the check had been drawn, either under the name of Lorraine Lawson or under the name of Stafford, which name she used in signing the check. With the exception of a few moments, appellant was present with Lorraine in all

the foregoing occurrences. Appellant was acquitted of a violation of section 476a of the Penal Code, but convicted on the fictitious check count as a principal who had aided and abetted Lorraine in passing the fictitious check.

There can be no question as to the sufficiency of the evidence to sustain appellant's conviction. ■ Appellant argues that he was unlawfully convicted because Lorraine, who had pleaded guilty to the violation of section 476a in connection with the same check for the issuing of which he was convicted, received only a one-year county jail sentence. There is no merit in this contention. He argues that since Lorraine received a county jail sentence her crime was reduced to a misdemeanor and therefore that he could not be found guilty of a higher degree of crime. The fact that Lorraine had her crime reduced to a misdemeanor through the punishment inflicted does not affect the guilt of appellant as a principal in the felony charged against him. Pursuant to section 31 of the Penal Code, the actual perpetrator and the aider and abettor may severally be convicted, convicted of a lesser offense, or acquitted without reference to the conviction or acquittal of the other. (*People* v. *Simpson,* 66 Cal. App.2d 319, 329 [152 P.2d 339].)

■ Lorraine was produced as a witness for the prosecution and testified at considerable length concerning the transaction leading up to the issuance of the check involved but she denied that she had told Farmer she had money coming from her ex-husband through a property settlement. The prosecution proceeded to impeach her and in doing so introduced in evidence a certified copy of the divorce decree which recited a full property settlement had been made prior to the decree being entered and that the decree had been entered 18 years before the transactions with which we are here concerned. Such impeachment is warranted by section 2049 of the Code of Civil Procedure. (See, also, *People* v. *Bushton,* 80 Cal. 160, 161 [22 P. 127, 549] ; *Norwood* v. *Kenfield,* 30 Cal. 393, 398.) ■ Appellant claims error in the introduction of evidence that Lorraine had pleaded guilty to the charge of passing the check to Farmer and was currently serving a term of confinement for that offense. This proof was a part of the proof of the crime of which appellant was charged and was therefore properly introduced.

■ Appellant assigns as error the reading into evidence of testimony he had given in a previous criminal prosecution

wherein he made certain admissions relative to the issues in the instant case. These were properly admissible as statements against interest and did not serve, as appellant contends, to make him a witness against himself in violation of his constitutional rights against self-incrimination. (*People* v. *Thourwald*, 46 Cal.App. 261, 267-268 [189 P. 124].)

■ Appellant complains of the admission in evidence of certain testimony given by Willie Myers while he was with the appellant and Lorraine in San Francisco. Myers testified that when appellant learned the police were making inquiries concerning the checks that had been drawn by Lorraine on the Auburn bank while they were in the hotel, he commented to Myers that he had expected that the checks would not get back so soon. Knowledge of the recent activities of Lorraine in respect to other fictitious checks was relevant to show that what he did in Napa in aiding Lorraine to pass a fictitious check on Farmer was done with knowledge of other like activities of Lorraine; that he possessed that guilty knowledge requisite to convict an aider and abettor. ■ Appellant further complains of the introduction in evidence of the activities of Lorraine in passing a fictitious check in Phoenix, Arizona, and of evidence that she had been arrested for that crime and pleaded guilty to it at a time some six or seven months before the transactions here involved and during a time when she and appellant were living together as husband and wife. This evidence was given by Lorraine over objection and she further testified over objection that when she was arrested for the crime of uttering a fictitious check in Phoenix, he was arrested too at the same time on the same charge. Here again this testimony was relevant and admissible to show guilty knowledge and intent in the matter of the crime in Napa for which he was being tried. Certainly, the fact that he was arrested at the same time, charged with the same offense during the continuance of the same association with Lorraine helped to prove the charge for which he was tried in Napa.

■ Appellant contends that the court committed error in not instructing the jury that oral admissions of a defendant should be viewed with caution. Of course, this instruction should have been given, but the proof of appellant's guilt is so strong that we cannot on the record here say that the error was prejudicial or would justify reversal.

Although appellant makes further assignments of error, and although we have thoroughly examined the same, we think it

unnecessary to treat them specifically. They are without merit.

The judgment and the order appealed from are affirmed.

Schottky, J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.