[Crim. No. 4033. First Dist., Div. Three. Aug. 31, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. ELVIS JACKSON HARDIN, Defendant and Appellant.

Robert H. Miller, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—The question in this case is whether appellant, who pleaded guilty to a charge of violation of section 32 of the Penal Code and who was sentenced to the state prison, had validly waived the right to counsel. The information filed against appellant charged that defendant "on or about June 12, 1961, at Pittsburg in Contra Costa County, State of California, did then and there unlawfully and wilfully and feloniously and with knowledge that the crime of burglary, a felony, was committed by RODNEY CRISMORE, did harbor, conceal and aid said Rodney Crismore, with the intent that said Rodney Crismore should avoid and escape from arrest, trial, conviction and punishment for said felony."

On July 17, 1961, appellant appeared in the superior court, before another judge than the one who later sentenced him, for arraignment. The district attorney informed the judge that appellant was 18 years of age and that his parents were in court. The court asked them to come forward but only one, the mother, was interrogated and responded. The following is a transcription of the proceedings: "MR. WALKER: No. 7539, People of the State of California against Elvis Jackson Hardin. This is the time and place set for arraignment in this matter. May the record show the defendant is present in court, Your Honor. He is eighteen years of age. It is my understanding his parents are in court here today. THE COURT: Would you come forward? May we have your name, please, your name? MRS. PAUL G. JACKMAN: Mrs. Paul G. Jackman. THE COURT: You are the mother of Elvis Hardin? MRS. PAUL G. JACKMAN: Yes, sir. J-a-c-k-m-a-n. THE COURT: You consent that he proceed at this time, now, with this matter? MRS. PAUL G. JACKMAN: (Nods head in affirmative manner.) THE COURT: You have to answer out loud. The question I asked you is: Are you willing to have him proceed at this time on this matter? MRS. PAUL G. JACKMAN: Yes, Your Honor. THE COURT: Mr. Walker——

Mr. Walker: Yes, Your Honor? The Court: ──is Penal Code Section 32 a charging crime? Does he have to be an accessory to a particular crime? Mr. Walker: It is my understanding, it would be a charging crime, Your Honor, with the other crime shown. The Court: I suppose that is right because 33 talks about the punishment. All right. Mr. Hardin, the District Attorney of this County has filed an information against you charging you with a crime of a felony, to wit: accessory after the crime. You are advised that it is your right to have the services of a lawyer to represent you at all stages during these proceedings. Do you want the services of a lawyer? Elvis Hardin: No, sir. The Court: You understand if you don't have sufficient money, funds or property with which to hire a lawyer, the Court will appoint one to represent you without any charge to you? Elvis Hardin: (Nods head in affirmative manner.) The Court: You understand that fact? Elvis Hardin: Yes, sir. The Court: Is it still your statement you want to proceed without a lawyer? Elvis Hardin: Yes, sir. The Court: And, Mrs. Jackman, is that your desire as well? Mrs. Paul G. Jackman: I left it up to him, Your Honor. The Court: It is your son. Mrs. Paul G. Jackman: I know, but I don't have much say-so about it. The Court: All right, the clerk will proceed with the arraignment.'' Thereupon, the clerk handed the defendant a copy of the information and a transcript of the preliminary hearing, asked him if the name charged was his true one, to which appellant replied, ''Yes, sir,'' and read the information. The clerk asked appellant how he pleaded and appellant replied, ''Guilty.'' The district attorney asked that the matter be referred to the probation department; this was done, and August 7 was the date set for sentence. Thereupon, appellant's mother asked if bail could be reduced so that appellant could go to work, and the district attorney stated that apparently there were people who were willing to help appellant who had come to the district attorney's office and that, considering the age of defendant and the fact that he could go to work, he had no objection to reduction in bail. The judge reduced bail from $1,000 to $500.

On August 7, 1961, the defendant appeared in propria persona for hearing in the matter of probation and for pronouncing of judgment. A minute order was made stating that the court had fully considered the report of the probation officer and, being fully advised in the premises, ordered

that defendant be denied probation. Thereupon, appellant was arraigned for judgment, and in reply to the question whether he had any cause to show why judgment should not be pronounced against him, replied that he had none, and he was sentenced to state prison. His notice of appeal reads: "I was convicted of Acces*ority* after the fact. and sentence to prison on Aug. 7, 1961. I wish to appeal my case."

Appellant's right to counsel in a criminal prosecution is guaranteed by the Constitution of California, article I, section 13, and by the Fourteenth Amendment to the Constitution of the United States (*Carnley* v. *Cochran,* 369 U.S. 506, 513 [82 S.Ct. 884, 8 L.Ed.2d 70]). The right to counsel may be waived (except in cases where the maximum punishment is death or life imprisonment without possibility of parole), but no plea of guilty of any other felony shall be accepted from a defendant who does not appear with counsel unless the court shall first fully inform him of his right to counsel and unless the court shall find that the defendant understands his right to counsel and freely waives it, and then, only if the defendant has expressly stated in open court, to the court, that he does not wish to be represented by counsel (Pen. Code, § 1018). ■■ The court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, and the punishments which may be exacted (*In re James,* 38 Cal.2d 302, 313 [240 P.2d 596]); and the education, experience, mental competence and conduct of the accused are elements in determining whether there has been an intelligent waiver of counsel (*People* v. *Chesser,* 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 246]).

Considering, first, the personal capacity of the accused, we find no more than that he is 18 years of age, he uttered no words except "Yes, sir," "No, sir" and "Guilty," that his notice of appeal gives some evidence of illiteracy, and that his mother could be of little help in counselling him. The judge who sentenced appellant may have acquired knowledge of his capacity to understand the proceedings and the effect of his plea of guilty from the probation report, but the court made no finding in that respect after reading the report (the report itself is not before us), and, of course, the judge who accepted the plea had no such report available to him at the time of plea. ■■ Although minority itself would not prevent an intelligent waiver (*People* v. *Williams,* 174

Cal.App.2d 364, 379 [345 P.2d 47]), it is an important cir-
cumstance to be observed in the consideration of the other
factors of the case (see cases cited 71 A.L.R.2d 1160 et seq.)

We turn to the subject of the required understanding by
appellant of the nature of the charge, the elements of the
offense, and the available pleas and defenses. The crime
of being an accessory is a complex one, being composed of
the following elements, each of which must be alleged and
proved by the prosecution: (1) someone other than the ac-
cused, the principal to the crime, must have committed a spe-
cific, completed felony; (2) the accused must have harbored,
concealed or aided the principal; (3) the element of *scienter*
must be present in this, that the accused must have had
knowledge that the principal has committed a felony, or has
been charged or convicted thereof; (4) the element of specific
intent must have been present, namely, that the accused must
have harbored, concealed or aided with the intent that the
principal may avoid or escape from arrest, trial, conviction
or punishment. Although it is not the duty of the
court, in accepting a waiver of counsel and a plea of guilty,
to instruct the accused on the subject of the offense in the
manner of a law school lecturer, nevertheless the court must
be satisfied that the accused does have an understanding of
the essential nature of the crime. We believe that the very
brief colloquy between the judge and the accused, with the
laconic replies of the latter, could not possibly inform the court
that the defendant knew the nature of the offense of being
an accessory.

 Considering the first element of the crime, described
in section 32 of the Penal Code, we find that the information
not only did not give the date and place of a burglary (which
would have been necessary because the accused could not be
charged simply with harboring, concealing or aiding a burglar
or a felon, but only with assisting one who had committed a
particular felony or felonies), but the information does not
even allege that any burglary, or any felony for that matter,
actually had been committed. [██ The requirement that the
principal felony shall actually have been committed has
existed from common law days (1 Hale, Pleas of the Crown,
p. 621; 4 Blackstone's Commentaries, p. 38). It is true that
the information states that defendant had knowledge that a
burglary had been committed by Crismore, but that is a very
different thing. It may well be that appellant mistakenly
believed or suspected that the crime of burglary had been

committed, but this would not be sufficient to support the accessory charge (22 C.J.S. § 95, p. 275) ; or it is possible that appellant knew that a burglary actually had been committed, but did not know that the prosecution would have to prove beyond reasonable doubt the commission of the burglary, a specifically charged burglary committed by the designated felon, if the case against appellant went to trial (22 C.J.S. § 105, p. 296). Witnesses to the burglary might not be available, or might be incompetent to testify. Even if the accused were quite competent to understand a correct information, he could not have understood the nature of the charge herein, because of the omission of the essential element. As an example of the problems connected with the law of accessories, and in particular with respect to the omission from the information of an allegation that a felony had been committed, we observe that it is possible that the principal, Crismore, may have been convicted of or may have pleaded to burglary in the second degree, and may have received a sentence in the county jail, which would have reduced his offense to a misdemeanor. Could appellant then have been guilty of a felony if he were accessory to the commission of a misdemeanor? (The case of an accessory may be quite different from that of an aider or abettor, who is himself a principal as considered in *People* v. *Griffith,* 181 Cal.App.2d 715 [5 Cal.Rptr. 620], because of the specific requirement in section 32 that a felony must have been committed.) We do not answer this question, but simply state it to show that the charge of being accessory is one of considerable intricacy.

An understanding by an accused, who without counsel pleads guilty, of the punishments which may be exacted, an understanding required under the holdings of the Supreme Court in the *Chesser* and *James* cases, is not shown by anything which appears in the record in this case. Probation was denied, but there is nothing in the record to show why the court denied it, nor what the recommendation of the probation officer was, nor whether the report and recommendations were made available to the defendant at least two days prior to the time fixed by the court for the hearing and determination of the report, as required by section 1203 of the Penal Code. There is nothing to show that appellant was alerted to the recommendation of the probation officer, whatever that recommendation may have been, or to probability of denial of probation, or to any recommendation as to the sentence. At the time appellant entered his plea, the court, with the rather

ready acquiescence of the district attorney, had reduced bail in order that defendant could get a job. It seems to us important that defendant should have been given some intimation of the likelihood of the grave consequences, so utterly different from release on low bail to obtain employment. Even upon denial of probation, several alternatives seem to have been possible, namely, imprisonment in the state prison, confinement to the county jail, which would have reduced the crime to a misdemeanor, fine, or commitment to the Youth Authority, which also would have reduced the offense to a misdemeanor (Pen. Code, § 17). There is nothing in the record to show that appellant had any knowledge of the penalties which might be imposed. At any time before judgment, he might have been successful in withdrawing his plea of guilty (Pen. Code, § 1018), or counsel might have been helpful to him in the matter of his sentence.

 We believe it is appropriate to call attention to the admonition made by the Supreme Court of the United States (*Johnson* v. *Zerbst,* 304 U.S. 458, 465 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357]) and by the Supreme Court of California (*People* v. *Chesser,* 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 246] ; *People* v. *Mattson,* 51 Cal.2d 777, 790-791 [336 P.2d 937]) that the trial court should make a finding of its determination on the validity of the waiver of counsel. The more completely this is done, the better assurance will be given that the accused has made the waiver competently, intelligently and completely.

 We observe that there is a combination of circumstances which differentiates the particular case before us from very many others, in the youth of the accused, the intricacy of the offense, and the defectiveness of the information.

Judgment is reversed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied September 25, 1962.